UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| BOBBY L. SEYB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:22 CV 64 RWS |
| | ) | |
| MARTIN O'MALLEY, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Bobby L. Seyb brings this action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of the Commissioner's decision denying her applications for disabled adult child's insurance benefits under Title II[1] and for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 401, 1381, et seq.  For the reasons set forth below, I will remand this matter for further consideration by the Commissioner.

### **Procedural History**

Plaintiff Bobby Seyb was born on October 20, 1991.  (Tr. 1132)  She is currently 32 years old.  She has a high school equivalency degree.  (Tr. 38)  Seyb has never been employed.  (Tr. 39-41)

---

[1] Seyb filed this application as a survivor claim under her deceased father's social security earnings. (Tr. 1317)

Seyb filed an application for supplemental security income on March 5, 2018 and an application for disabled adult Child's insurance on September 7, 2018. (Tr. 9)  In both applications she alleged her disability onset began on October 20, 1991, the date of her birth.  She alleges that she is disabled based on her medical conditions of Tetralogy of Fallot[2], obesity, asthma, and depression.  Following denial of benefits, Seyb sought a hearing before an Administrative Law Judge (ALJ) which was held on August 21, 2019.  (Tr. 9)  On November 15, 2019, the ALJ issued a decision dismissing Seyb's request for a hearing of her Title II claim based on *res judicata*.[3]  (Id.)   The ALJ adjudicated only Seyb's Title XVI claim and found that she was not disabled and could perform unskilled light exertional work.  (Tr. 21)

On October 1, 2020, Seyb appealed that decision to this Court.  On May 24, 2021, the Commissioner of Social Security filed a motion to reverse and remand the case for further consideration by the Social Security Administration.  (Tr. 1241-1244)  The Commissioner asserted that remand was necessary because *res judicata* should not have applied to Seyb's Title II claim.  The Commissioner requested that upon remand the ALJ provide a hearing and issue a new decision

---

[2]"Tetralogy of Fallot (TOF) is a combination of four congenital (present at birth) heart defects that affect infants and children. The defects occur together and change the way blood flows through the heart and lungs." www.hopkinsmedicine.org/health/conditions-and-diseases/tetralogy-of-fallot-tof#.

[3]Seyb had previously applied for Title II child's insurance benefits on July 25, 2014 and the claim was denied on August 22, 2014.

adjudicating both Seyb's Title II and Title XVI claim using the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a).  On May 25, 2020, this Court issued the order of remand.  (Tr. 1240)  Subsequently, on January 21, 2022, a new hearing was held by the ALJ.  (Tr. 1159)  On May 27, 2022, the ALJ issued her decision finding that Seyb was not disabled and could perform light-duty, unskilled work.  (Tr. 1147)  The ALJ's decision is the final decision of the Commissioner.  42 U.S.C. §§ 405(g) and 1383(c)(3).

In this action for judicial review, Seyb contends that 1) ALJ improperly analyzed a treating psychiatric nurse's and an internal medicine physician's opinions under § 404.1520; 2) the ALJ erred in finding that Seyb was not disabled before attaining the age of 22; and 3) the residual functional capacity (RFC) constructed by the ALJ was not supported by the weight of the evidence. Seyb requests that I reverse the Commissioner's final decision and remand the administrative decision for an award of benefits or for further evaluation.  For the reasons that follow, I will remand this matter for further evaluation by a new ALJ.

## Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt Seyb's recitation of uncontroverted material facts (ECF # 15-1) as supplemented by the Commissioner (ECF # 16-1).  These uncontroverted material facts recite the medical records and findings in the record in addition to the plaintiff's statements

regarding her condition submitted in written forms and in her testimony before the

ALJ.  Additional specific facts will be discussed as needed to address the parties'

arguments.

## Discussion

A.    <u>Legal Standard</u>

To be eligible for disability insurance benefits under the Social Security Act,

a plaintiff must prove that she is disabled.  <u>Pearsall v. Massanari</u>, 274 F.3d 1211,

1217 (8th Cir. 2001); <u>Baker v. Secretary of Health & Human Servs.</u>, 955 F.2d 552,

555 (8th Cir. 1992).  The Social Security Act defines disability as the "inability to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12

months."  42 U.S.C. § 423(d)(1)(A).  An individual will be declared disabled "only

if [her] physical or mental impairment or impairments are of such severity that

[she] is not only unable to do [her] previous work but cannot, considering [her]

age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Under the authority of the Social Security Act, the Social Security

Administration promulgated regulations providing for the payment of disabled

child's insurance benefits if the claimant is 18 years old or older and has a

disability that began before attaining the age of 22 years old.  20 C.F.R.

404.350(a)(5).

       To determine whether a claimant is disabled, the Commissioner engages in a

five-step evaluation process.  See 20 C.F.R. § 404.1520; Bowen v. Yuckert, 482

U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the

claimant is engaged in substantial gainful activity (SGA).[4]  If not, the disability

analysis proceeds to the second step.  In this step the Commissioner decides

whether the claimant has a "severe" impairment or combination of impairments,

meaning that which significantly limits his ability to do basic work activities.  If

the claimant's impairment(s) is not severe, then she is not disabled and the analysis

ends.  If the claimant has a severe impairment the Commissioner then proceeds to

the third step and determines whether claimant's impairment(s) meets or equals

one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  If

claimant's impairment(s) is equivalent to one of the listed impairments, she is

conclusively disabled.  If the impairment is not equivalent to a listed impairment,

then the Commissioner proceeds to the fourth step to determine whether the

---

[4] "Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. 'Substantial work activity' is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)).  'Gainful work activity' is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975).  If an individual engages in SGA, she is not disabled regardless of how severe his physical or mental impairments are and regardless of her age, education, and work experience." (Tr. 11.)

claimant has the residual functional capacity[5] to perform her past relevant work.[6] If so, the claimant is not disabled.  If not, or the claimant does not have any past relevant work, at the last step the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy.  If not, the claimant is declared disabled and becomes entitled to disability benefits.

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001).  "[Substantial evidence] means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (cleaned up). Determining whether there is substantial evidence requires scrutinizing analysis. Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

---

[5] An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  In determining a claimant's residual functional capacity an ALJ must consider all of the claimant's impairments that are not severe.  20 C.F.R. 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p.

[6] "The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965)."  (Tr. 12.)

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision.  McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010).  If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision.  Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir. 2012).  I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. McNamara, 590 F.3d at 610.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence.  Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984).  The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole.  See e.g., Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990).  In considering the subjective complaints, the ALJ is required to consider the factors set out by Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), which include:

> [The] claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions.

7

Id. at 1322.[7]  When an ALJ explicitly finds that the claimant's testimony is not credible and gives good reasons for the findings, the court will usually defer to the ALJ's finding.  Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007).  However, the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding.  Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir. 2002).

B.    ALJ's Decision

In her written decision, the ALJ found that Seyb had never engaged in substantial gainful activity.  (Tr. 1136)  The ALJ found that Seyb had the following severe impairments: a remote history of Tetralogy of Fallot repair as an infant due to a congenital heart defect, obesity, asthma, and depression.  (Id.)  The ALJ found these impairments to be severe because they significantly limit Seyb's ability to perform basic work activities.  (Id.)  The ALJ determined that Seyb's impairments or combination of impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 1137)  The ALJ found Seyb to

_____

[7] This was once referred to as a credibility determination, but the agency has now eliminated use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of an individual's character. However, the analysis remains largely the same, so the Court's use of the term credibility refers to the ALJ's evaluation of whether a claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record."  See SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); Lawrence v. Saul, 970 F.3d 989, 995 n.6 (8th Cir. 2020) (noting that SSR 16-3p "largely changes terminology rather than the substantive analysis to be applied" when evaluating a claimant's subjective complaints).

have the residual functional capacity (RFC) to perform light work with the

following limitations:

> [Seyb] should avoid climbing ladders, ropes, or scaffolds.  She can
> occasionally climb ramps and stairs. She can occasionally balance, …
> stoop, kneel, crouch, and crawl.  She should avoid exposure to
> extreme cold and extreme heat.  She should avoid exposure to
> concentrated fumes, odors, dust, gases, and poorly ventilated areas.
> She should avoid hazards, such as unprotected heights and moving
> mechanical parts.  She is able to complete simple, routine tasks in an
> environment with minimal changes in the job duties and setting.  She
> should not be subjected to fast-paced production requirements. In
> addition, the claimant is capable of occasional interaction with
> supervisors, co-worker, and the public.

(Tr. 1139)  The ALJ consulted a vocational expert (VE) who testified that, based

on the above RFC, Seyb could perform the jobs of a housekeeping cleaner, a

mailroom clerk, and a cafeteria attendant.  (Tr. 1174-1175)  The ALJ then added an

additional RFC requirement that the person required the use of portable oxygen

throughout the workday.  The VE testified that based on such an RFC there were

no jobs in the national economy that such an individual could perform.  (Tr. 1175)

Seyb's attorney then asked the VE about employer tolerances for absenteeism.

The VE opined that two unapproved absences a month would result in termination.

(Tr. 1175)  The VE also testified that if a worker needs to miss work once in a

great while for a medical appointment that would not be a problem.  But if a

worker was going to miss work frequently or on a regular basis for doctor visits

these absences would not be tolerated.  That is because it is very easy to replace

employees in routine entry level jobs like those described above.  A regular absence multiple times a month would preclude employment.  (Tr. 1177).  In her decision, the ALJ did not include the daily use of oxygen or absence from work for two days or more per month in her determination of Seyb's RFC.  The ALJ concluded that Seyb was not disabled within the meaning of the Social Security Act.  (Tr. 1148)

C.     RFC

Seyb has an IQ score of 76.  (Tr. 293)  Seyb has a congenital heart condition that required surgery to correct when she was young.  (Tr. 16, 35)  It is undisputed that she also suffers from obesity, asthma, and depression.  The record shows that she had some limitations in physical activities in school due to her heart.  She passed out in gym class on one occasion due to overexertion.  (Tr. 43)  She still has a small hole in her heart and was advised by her heart doctor to know her limits in doing physical activities.  (Tr. 42)  She was fitted with a pacemaker in 2017 (Tr. 16, 1136)  Seyb testified at her second hearing that based on her breathing issues she was placed on oxygen in October 2020.  She uses her oxygen tank all day at home and uses a portable oxygen device when she goes to doctor appointments or goes walking to try to lose weight.  (Tr. 1168-1169)

In her decision, the ALJ discounted Seyb's need for oxygen based one note in the record from Dr. Mauricio Ferrer who saw Seyb one time on August 20, 2021

to adjust the calibration of Seyb's pacemaker.  (Tr. 2119-2120)  Dr. Ferrer noted,

"It is unclear why she requires oxygen as she is not typically hypoxemic."  (Tr.

2119)  Dr. Ferrer  is not a pulmonologist and it is unclear what records, if any, he

reviewed regarding Seyb's lungs.  The record contains abundant evidence of

Seyb's medical treatment for her asthma and heart condition that led to her being

placed on oxygen.  The VE testified that there were no jobs in the national

economy for a the person required the use of portable oxygen throughout the

workday.  The VE testified that, based on  Seyb's RFC including the need for

oxygen, there were no jobs in the national economy that such an individual could

perform.  The ALJ failed to adequately explain why the RFC analysis did not

include Syeb's purported need for oxygen on a daily basis.

There is substantial evidence in the record from treater psychiatric nurse

Geoff Westhoff, who has treated Seyb continuously since November 2015, that

Seyb's anxiety and depression cause Seyb to have difficulty in completing tasks

and that she isolates herself and experiences a lack of motivation performing

activities of daily living.  (Tr. 553-554)  While Seyb can perform limited daily care

for herself she is limited in her other activities.  In her decision, the ALJ found that

Westhoff's opinion was not supported by her routine mental status examinations in

the record.  To bolster this conclusion, the ALJ recites how Seyb spent a day at the

zoo in July 2019 and attended her best friend's wedding in August 2019.  These

11

two isolated occasions are not substantial evidence to discount Westhoff's medical opinions.

Westhoff and Seyb's treating internist, Dr. Barbara Turley, have both opined that based on her cognitive issues (Westhoff) and her chronic fatigue, shortness of breath and dizziness due to her congenital heart disease and asthma (Turley) Seyb would miss more than four days of work a month. The record also indicates that over the course of recent four years she had two or three and as many as six to eight medical appointments a month. Although the VE stated that no work would be available to someone being absent from work more than two times a month, the ALJ did not address Seyb's history of and future need for routine and situational medical appointments that would exceed two absences per month.

Seyb also asserts that the ALJ incorrectly analyzed her claim for disabled adult child's insurance benefits. The ALJ refers several times in her decision that the record does not support a claim for a childhood disability. (Tr. 1141) Seyb asserts that the question before the ALJ was not whether Seyb was disabled as a child, but whether she was disabled and unable to work as an adult with an onset before age 22. Seyb asserts that the record contains evidence of cognitive, heart, and breathing issues when Seyb was 19 and 20 years old that may support a finding of disability. Seyb asks that this issue be remanded with instructions for

the ALJ to obtain a medical expert's opinion on Seyb's medical status during this period.

As a result, I find that the ALJ's decision that discounted Seyb's need for oxygen is not supported by substantial evidence.  The ALJ's lack of analysis of Seyb's past and future need of multiple monthly medical appointments also fails to support the RFC that she assigned to Seyb.  Moreover, I agree with Seyb that the ALJ should develop the record regarding Seyb's ability to work as an adult with an onset before age 22 by obtaining a medical expert's opinion on this issue.

### Conclusion

Based on the complete record in this case, I find that the ALJ's decision finding Seyb is not disabled is not supported by substantial evidence in the record.

Accordingly,

**IT IS HEREBY ORDERED that**, pursuant to sentence-four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and the case is **REMANDED** for further proceedings in accordance with this memorandum and order.

**IT IS FURTHER ORDERED that** upon remand this matter shall be referred to a different Administrative Law Judge for further proceedings including a new hearing to address the issues raised in Bobby Seyb's Brief in Support of Complaint.

A separate Judgment is entered herewith.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 29th day of March, 2024.